KAUFMAN, SEMERARO, & LEIBMAN, LLP
2 Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: jsantagata@northjerseyattorneys.com
Attorneys for Plaintiff

| | |
|---|---|
| HERMINE BARTEE,<br><br>  Plaintiff,<br><br>v.<br><br>ENGLEWOOD HOSPITAL AND MEDICAL CENTER, INC.,<br><br>  Defendant. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>DOCKET:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to Fed.R.Civ.P. 8, Plaintiff Hermine Bartee alleges as follows.

## PARTIES

1.  Plaintiff Hermine Bartee is 78 years old. She resides at 419 North 11th Street, #2R in Newark, New Jersey 07107.

2.  Defendant Englewood Hospital and Medical Center ("**Hospital**") is a non-profit corporation incorporated in New Jersey with a business address of 350 Engle Street in Englewood, New Jersey. Its registered agent is Warren Geller at the same address.

## JURISDICTION AND VENUE

3. The United States District Court for the District of New Jersey, Newark Vicinage, has jurisdiction and venue over this complaint pursuant to: 28 U.S.C. § 1331, 1367(a), Fed.R.Civ.P. 4, N.J. Ct. R. 4:4-4, and 28 U.S.C. § 1391(b)(2).

4. The Court has federal subject matter jurisdiction because this complaint alleges violation of the Federal Age Discrimination in Employment Act ("**ADEA**"), 29 U.S.C. § 623, et seq.

5. The Court has supplemental jurisdiction over Plaintiff's state law claims because they arise from the same set of operative facts as Plaintiff's federal claims— Plaintiffs' employment with the Hospital.

6. Venue is proper in the Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Bergen County, which is located within the Newark Vicinage of the United States District Court for the District of New Jersey.

## FACTUAL BACKGROUND

7. The Hospital hired Plaintiff as a certified recreation therapy director in 2006. Soon after, Plaintiff was made the permanent occupational therapist in the Hospital's behavior health unit. Plaintiff was 68 years old when she was hired. The supervisor who hired her is no longer employed by the Hospital.

8. At the time of her hire, Plaintiff made approximately $19 per hour with the Hospital. Plaintiff was terminated by the Hospital in July 2016.

9. From 2006, when she was hired, through her termination in July 2016, Plaintiff was the lowest paid therapist in the behavioral health unit despite that she worked two positions, occupational therapist and recreational therapist, and despite that she ultimately worked more hours and had more responsibilities than any other therapist. Plaintiff had the highest credentials, education, and most cross-discipline of any of the therapists in the behavioral health unit and was the only therapist qualified to do the work of any of the therapists.

10. The hospital hired five therapists after Plaintiff. All were far younger and were paid considerably more. These therapists were hired by a new supervisor, Linda Leighton. Plaintiff was hired by the previous supervisor.

11. Just as an example, therapist Aaron Burnstock was hired in his late 20s, had far less qualifications than Plaintiff, was asked to do less work, but made almost $10.00 per hour more.

12. Of the four other therapists hired while Plaintiff was with the hospital, the oldest was 48 years old when hired. Plaintiff was roughly twenty years older at the time. The 48-year-old therapist made approximately 30% more than Plaintiff and had greater benefits.

13. During her employment with the Hospital, Plaintiff was not allowed to take advantage of the Hospital's investment and insurance plans, which were provided to other therapists in the behavior health unit. The Hospital told Plaintiff she could not take advantage of these plans because she supposedly did not work full time. Plaintiff worked well beyond full time.

14. After Mr. Burnstock was hired, the Hospital cut Plaintiff's work days to three a week and gave Mr. Burnstock a full-time schedule. However, Plaintiff routinely worked overtime and came in for holidays, weekends, and snow days and was a full time employee based on hours worked.

15. During her employment with the Hospital, the behavioral health unit threw birthday parties for every employee but Plaintiff. These parties were overseen by Ms. Leighton.

16. Plaintiff is African-American. She was the only African-American therapist in the behavioral health unit.

17. On June 2, 2016, Plaintiff placed third in a pageant called "Ms. Senior America New Jersey." The same month, Plaintiff brought photos of the pageant to the Hospital and shared them with her co-workers. Ms. Leighton was visibly disturbed by the photos. Plaintiff was fired at the end of the month.

18. Plaintiff's group therapy sessions in the behavioral health unit were supposed to involve only voluntary patients, meaning psychiatric patients who had voluntarily committed themselves to the Hospital. Involuntary patients were only supposed to be in the sessions if they had a personal escort.

19. Patients escaped from the behavioral health unit fairly frequently. In many incidents, patients were caught running down the highway or nearby train tracks. Prior to Plaintiff's termination, no employee in the unit was disciplined for an escape.

20. At some point prior to June 29, 2016, Plaintiff lost her personal keys to the behavioral health unit. She did not lose them at the Hospital, but somewhere off-site.

21. On June 29, 2016, Plaintiff used the Hospital's spare set of keys to the occupational therapy room to hold a group therapy session at around 1:45pm. The spare keys were routinely used by therapists. Therapists were not actually required to have their own set of keys. In fact, therapists lost their keys so often that the Hospital made the behavioral health unit keyless.

22. The June 29, 2016 group therapy session was supposed to only involve voluntary patients. At some point, an involuntary patient entered the session without a personal escort. Plaintiff was not supposed to be responsible for involuntary patients. It is unclear how the involuntary patient entered the session, but the behavior health unit is required to hold a patient count every 15 minutes to account for involuntary patients. This was apparently not done on June 29, 2016.

23. At some point during the group therapy session, the involuntary patient apparently took Plaintiff's spare keys off of a table. Plaintiff reported the keys missing around 3pm or 4pm that day and the entire behavior health unit was alerted. By that time, the involuntary patient had escaped. He was later found and safely returned to the Hospital.

24. Plaintiff stayed at the Hospital until 9pm on June 29, 2016 to type a statement about the incident to the head nurse at the Hospital, with a copy to Ms. Leighton. The nurse on duty around 9pm personally called Plaintiff to acknowledge

receipt of the email and to state "you did well." The nurse told Plaintiff she could not have a copy of the email for her records.

25. On August 10, 2016, Ms. Leighton wrote a memo to Plaintiff terminating her employment, falsely stating, among other things, that Plaintiff had not filed an incident report or other summary of the incident. Plaintiff had done so on the same day as the incident.

26. During Plaintiff's employment with the Hospital, no other employee in the behavioral health unit was disciplined for a patient's escape, despite that such escapes occurred five to ten times during Plaintiff's employment.

27. Ms. Leighton saw the June 29, 2016 incident as an opportunity to make the behavioral health unit younger and to get rid of an employee whose age always bothered her. Ms. Leighton had consistently reduced Plaintiff's hours prior to the termination in order to set up her replacement by younger therapists.

28. In August 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging, among other things, that her termination was impermissibly based on age.

29. On October 25, 2017, the Equal Employment Opportunity Commission issued Plaintiff a "right to sue" letter permitting her to file a complaint under Title VII within 90 days of receipt of the letter.

### COUNT ONE: FEDERAL AGE DISCRIMINATION
### (ADEA)

30. Plaintiff repeats and re-alleges paragraphs 1-29 of this complaint as if fully set forth in this count.

31. The ADEA generally protects employees age 40 and older from age discrimination.

32. The ADEA states:

It shall be unlawful for an employer--

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.

33. The Hospital is an "employer" under the ADEA.

34. The Hospital violated the ADEA when it terminated Plaintiff "because of" her age.

35. Plaintiff's employment with the Hospital shows that she was consistently treated differently than younger employees, that Ms. Leighton viewed Plaintiff as somehow different "because of" her age, and that a younger employee would not have been terminated for Plaintiff's supposed infraction. Mr. Burnstock was groomed to replace Plaintiff and ultimately did replace her after Plaintiff's termination.

## COUNT TWO: STATE AGE DISCRIMINATION
### (New Jersey Law Against Discrimination)

36. Plaintiff repeats and re-alleges paragraphs 1-35 of this complaint as if fully set forth in this count.

37. The New Jersey Law Against Discrimination ("**LAD**'), N.J.S.A. 10:5-1, et seq., prohibits age discrimination in employment to a greater extent than the ADEA. LAD does not protect merely employees age 40 or older, but employees of any age.

38. The Hospital violated LAD for the same reasons it violated the ADEA.

### DEMAND FOR RELIEF

Pursuant to counts one and two of the complaint, Plaintiff demands relief as follows:

(a) Compensatory damages, including for emotional distress;

(b) Punitive damages;

(c) Reinstatement;

(d) Attorneys' fees and costs;

(e) Such other relief as the court deems equitable and just.

### JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Plaintiffs demand trial by jury on all issues so triable.

Dated: December 28, 2017

JUSTIN D. SANTAGATA, ESQ.
KAUFMAN, SEMERARO & LEIBMAN, LLP